# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

MARIA C. KARLESKINT,           )
                               )
    Plaintiff,              )
                               )
v.                             )      No. 12-03281-CV-S-DGK-SSA
                               )
CAROLYN W. COLVIN,[1]          )
Acting Commissioner of Social Security,  )
                               )
    Defendant.              )

## ORDER AFFIRMING ALJ

Plaintiff Marcia Karleskint seeks judicial review of the Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42. U.S.C. § 401, *et seq*. Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 405(g).

Plaintiff alleges she became disabled as of October 3, 2003. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying disability benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

---

[1] As Defendant notes, Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the record supports a contrary result or because the court may have decided the case differently. *Id.*

**Discussion**

To establish entitlement to benefits, Plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §§ 423(d) and 1382(a)(3)(A). To determine a claimant's eligibility for benefits, the Commissioner employs a five-step evaluation process.[2] *See* 20 C.F.R. 404.1520(a)-(f) and 416.920(a).

---

[2] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the

At Plaintiff's hearing, the administrative law judge ("ALJ") found that Plaintiff suffers from the following severe impairments: rheumatoid arthritis, osteopenia, hypothyroidism, Sjögren's Syndrome,[3] herpes, and shingles secondary to rheumatoid arthritis. R. at 17. The ALJ then determined that these disorders do not meet the requirements of any of the impairments listed in 20 C.F.R., pt. 404, subpt. P, App. 1, and that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with additional limitations such as: no climbing, balancing, or crawling; and only occasional stopping, kneeling, or crouching. R. at 17-19.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because: (1) the ALJ failed to give controlling weight to the opinion of Plaintiff's treating physician; (2) the ALJ improperly evaluated Plaintiff's credibility; and (3) the ALJ failed to properly assess Plaintiff's RFC.

**A. The ALJ properly evaluated the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred when he failed to give controlling weight to the Medical Source Statement—Physical ("MMSP") of her treating physician, Dr. Stephen Armstrong, M.D. In that MSSP form, Dr. Armstrong opined that Plaintiff was able to lift and carry less than ten pounds occasionally and frequently; stand and/or walk for a total of less than two hours in an eight-hour workday; and sit for less than four hours in an eight-hour workday. R. at 358-59. Dr. Armstrong further indicated that Plaintiff could occasionally stoop, kneel, and

---

Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

[3] As Defendant notes: "Sjögren's syndrome is a symptom complex of unknown etiology, usually occurring in middle-aged or older women, marked by the triad of keratoconjunctivitis sicca (also called dry eye) with or without lacrimal gland enlargement, dryness of the mouth from salivary gland dysfunction (with or without salivary gland enlargement), and the presence of a connective tissue disease, usually rheumatoid arthritis; an abnormal immune response has been implicated. *See* DORLAND'S 980, 1848, 2087."

crouch, but never climb, balance, or crawl; was limited in her abilities to reach, finger, handle, and feel; and could not do repetitive manipulations with her hands. R. at 358-59. Because the ALJ determined that Dr. Armstrong's opinion was inconsistent with the record as a whole, he assigned the opinion little weight.

Under the Social Security Administration regulations, the opinions of treating physicians are generally entitled to substantial weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, despite this deference, the opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). In fact, an ALJ may discount or disregard the opinion of a treating physician where other medical assessments are more thoroughly supported or where a treating physician renders inconsistent opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

The ALJ's determination that Dr. Armstrong's opinion regarding Plaintiff's limitations is entitled to little weight is supported by substantial evidence on the record, including Dr. Armstrong's own treatment notes and the objective medical findings of Plaintiff's other medical providers throughout the relevant period of disability. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070-71 (8th Cir. 2004) (finding that the ALJ properly discounted a physician's opinion that was "not internally consistent with [the doctor's] own treatment notations").

For example, in November 2008, Dr. Armstrong observed that Plaintiff "had, at most, a trace of synovial thickening in the wrists, MP and proximal interphalangeal joints," and classified her rheumatoid arthritis as "under good control on current regimen." R. at 20, 346-47. Dr. Armstrong repeatedly considered Plaintiff's arthritis "stable" following an increase in medicine. R. at 20, 340-56. Similarly, Dr. Armstrong's suggested limitations regarding Plaintiff's abilities to sit, stand, and/or walk were unsupported by any similar suggested

4

limitations in his treatment notes, which showed that Plaintiff never complained to him about these issues. R. at 20, 340-56, 358-59. The ALJ also noted that Dr. Armstrong never prescribed pain medication that would corroborate the level of pain he attributed to Plaintiff in his MSSP form. R. at 20, 340-56.

The ALJ also properly considered that Dr. Armstrong only treated Plaintiff since March 25, 2008, and he specifically stated that the limitations set forth in the MSSP were relevant only since that date. R. at 20, 359. Thus, Dr. Armstrong's opinion did not address Plaintiff's condition between her alleged date of onset, October 3, 2003 and March 2008. In fact, much of Dr. Armstrong's opinion regarding Plaintiff's limitations was inconsistent with her medical records during that time period. R. at 20, 155-67, 191-200. *See Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 975 (8th Cir. 2009) (discrediting a physician's opinion where it was inconsistent with earlier records of treating physicians).

Overall, the ALJ properly discredited Dr. Armstrong's opinion because the opinion was contradicted by Dr. Armstrong's own notes and the other medical evidence of record. Accordingly, the ALJ properly accorded the opinion little weight.

**B. The ALJ properly assessed Plaintiff's credibility.**

Plaintiff also asserts that the ALJ did not properly evaluate her credibility in accordance with the factors set forth in *Polaski v. Heckler*. 739 F.2d 1320 (8th Cir. 1984). Particularly, Plaintiff argues that the ALJ did not fully consider her physical and mental limitations, which she argues all support her claim of disability.

Credibility determinations are generally the province of the ALJ, and courts will defer to an ALJ's explicit credibility determination when it is supported by "a good reason." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). When assessing a claimant's credibility, "the ALJ

must look to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Finch,* 547 F.3d at 935 (citing *Polaski,* 739 F.2d at 1322).

Here, and as the ALJ noted, the clinical and objective medical findings and Plaintiff's medical treatment records were inconsistent with the degree of pain and fatigue she alleged. R. at 21. For example, the medical records from 2003 through 2008 indicate that Plaintiff's rheumatoid arthritis was well-controlled, and she showed no debilitation other than very brief episodes of joint discomfort. R. at 21-22, 155-67, 191-200, 340-50. In fact, Plaintiff's medical records between October 2003 and the end of 2008 show that her medical providers regularly characterized her rheumatoid arthritis as "doing very well," "doing much better," "optimally controlled," "optimally suppressed," "well-controlled," or under "good" or "excellent" control with medication. R. at 21,159, 161, 166, 191-93, 195-96, 340-42, 347. Additionally, as the ALJ noted, Plaintiff's medical records did not support the level of functional restrictions she alleged due to her rheumatoid arthritis. R. at 22. In 2005, Plaintiff described herself as "essentially functional," R. at 200, and in 2005, Dr. Stanley Hayes, M.D., noted that Plaintiff was "fully functional for all required activities." R. at 192-97. Dr. Hayes reiterated these findings in May and September of 2005, February and August of 2006, and February and July of 2007. *Id*.

The medical records concerning Plaintiff's other alleged impairments also undercut Plaintiff's assertions of disability. For instance, while Plaintiff had shingles in 2006, the ALJ noted that the infection lasted only about six weeks. R. at 22, 257-64. In addition, Plaintiff had an outbreak of herpes in early 2008, but she stated that it was her first outbreak since 2003. R. at 22, 337-38. Finally, although Plaintiff testified that she was often fatigued, the ALJ noted that

she complained of this only once to Dr. Armstrong, and he did not prescribe any medication or treatment to address that complaint.

The ALJ also considered Plaintiff's daily living activities. As the ALJ observed, in the Function Report she submitted in support of her claim, Plaintiff reported that she was able to cook, make the bed, do light cleaning every day, shop, drive, do laundry, ride her stationary bike at the lowest setting, and go out to eat. R. at 22, 81-88, 395-96. The ALJ found these activities inconsistent with allegations of disability. *Medhaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009) (noting that certain acts such as cooking, vacuuming, making the bed, reading, washing dishes and doing laundry, were inconsistent with subjective allegations of disability).

Finally, the ALJ noted that Plaintiff stopped working for reasons other than her medical impairments. R. at 23. *See, e.g.*, *Medhaug*, 578 F.3d at 816-17 (finding that claimant leaving for non-medical reasons was relevant to the credibility determination). As the ALJ noted, Plaintiff worked in the San Diego school district as a purchaser for twenty-eight years prior to retiring and moving with her husband to Lebanon, Missouri. R. at 23, 157, 167, 199-200, 340-41. Because Plaintiff stopped working for reasons other than her medical impairments, the ALJ gave less credibility to her assertion that she was disabled by them.

Overall, the ALJ properly relied on significant evidence in the record as a whole to find Plaintiff not fully credible. The ALJ properly discounted Plaintiff's credibility because she underwent only routine medical treatment, her conditions were well-controlled with medication, and she had not required more frequent or acute care for her allegedly disabling medical impairments. R. at 22, 155-82, 191-200, 340-50, 406-08. *See, e.g.*, *Perkins v. Astrue*, 648 F.3d 892, 899-900 (8th Cir. 2011) (finding that a history of conservative treatment detracted from allegations of disabling pain); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009)

("Impairments that are controllable or amenable to treatment do not support a finding of disability."). The ALJ also set forth sufficient reasons to support his determination, and therefore, the Court affirms.

### C. The ALJ properly assessed Plaintiff's RFC.

After assessing the medical evidence of record, the ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1527(a) with the additional limitations that Plaintiff could not climb, balance, or crawl, and could only occasionally stoop, kneel, and crouch. R. at 18-19. The Court finds this determination supported by substantial evidence of record.

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding her symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96-7p.

Plaintiff first argues that the ALJ's RFC does not comply with Social Security Regulation 96-8p because it does not contain a function-by-function assessment of Plaintiff's ability to perform work-related activities. *See Depover v. Barnhart*, 349 F.3d 563, 565 (8th Cir. 2003). In

particular, Plaintiff argues that the ALJ failed to make specific findings regarding exertional and non-exertional limitations including lifting, carrying, standing, walking, handling, feeling, talking, seeing, remembering, etc. Plaintiff also maintains that the ALJ's RFC assessment is flawed because the ALJ failed to incorporate all of Plaintiff's limitations. Finally, Plaintiff argues the ALJ's RFC finding failed to include the appropriate "narrative discussion" relating the specific functional capacity findings to specific medical evidence of record.

Plaintiff's first argument that the ALJ failed to provide a function-by-function assessment is without merit. In determining Plaintiff's RFC, the ALJ referenced sedentary work as that "defined in 20 C.F.R. § 404.1527(a)." "Sedentary work" is defined in this regulation as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Additionally, the ALJ set forth additional postural limitations suggested by Dr. Armstrong in his February 2010 MSSP form, including that Plaintiff could not climb, balance, or crawl, and could only occasionally stoop, kneel, and crouch. The Eighth Circuit has held that an ALJ does not fail in his duty to assess a claimant's RFC merely because the ALJ does not explicitly address all functional areas where it is clear he implicitly found the claimant not limited in those areas. *Depover*, 349 F.3d at 567-68. It is clear that the ALJ incorporated all of Plaintiff's credible impairments here. Accordingly, the Court finds no error.

Plaintiff's assertion that the ALJ failed to address all her credible limitations is similarly without merit. As discussed above, the ALJ incorporated only those restrictions he found credible. Where, as here, the ALJ articulates the inconsistencies that undermine the claimant's subjective complaints, and when those inconsistencies are supported by the record, the court should affirm the credibility determination. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590

(8th Cir. 2004) ("We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility.").

Finally, Plaintiff asserts that the ALJ failed to provide a "narrative" between the RFC and the medical evidence as required by Social Security Ruling 96-8p. In making this point, Plaintiff essentially reiterates the argument she set forth in discussing the ALJ's alleged failure to properly evaluate the opinion of her treating physician, Dr. Armstrong.

An ALJ may base his RFC determination on all evidence of record. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Social Security Ruling 96-8p specifically requires that an RFC determination include "a narrative discussion describing how the evidence supports each conclusion." Although an RFC is a medical determination, in making this determination the ALJ must rely not only on medical evidence but on all relevant, credible evidence. *McKinney*, 228 F.3d at 863.

Here, as discussed above, the medical evidence supports the ALJ's determination, and the ALJ thoroughly considered and discussed this evidence in rendering his decision. Similarly, the ALJ discounted Plaintiff's allegations of disabling pain to the extent they were not consistent with the record as a whole. Although the ALJ did not follow each RFC limitation with a specific list of evidence supporting it, the opinion as a whole demonstrates that he fully considered all relevant evidence of record and based his RFC upon it. *Id.*

Overall, the ALJ's determination is both fully supported and sufficiently explained. Thus, the Court upholds the ALJ's determination of Plaintiff's RFC, finding that the ALJ's determination was based on substantial evidence of record and properly included only Plaintiff's credible limitations. *See Wildman*, 596 F.3d at 966.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**


Date:  May 21, 2013                                         /s/ Greg Kays                    
                                                          GREG KAYS, JUDGE
                                                          UNITED STATES DISTRICT COURT